John W. Mills (State Bar No. 149861)
  jmills@joneswalker.com
JONES WALKER LLP
3455 Peachtree Road NE, Suite 1400
Atlanta, GA  30326
Tel.: (404) 870-7517; Fax: (404) 870-7557

Jeffrey J. Phillips (*pro hac vice a*pplication forthcoming)
  jphillips@joneswalker.com
JONES WALKER LLP
811 Main Street, Suite 2900
Houston, TX 77002
Tel.: (713) 437-1864; Fax: (713) 437-1810

Andrew S. Harris (*pro hac vice a*pplication forthcoming)
  aharris@joneswalker.com
JONES WALKER LLP
190 East Capitol Street, Suite 800
Jackson, MS  39201
Tel.: (601) 949-4816; Fax: (601) 949-4804

Attorneys for Plaintiff The Breakfast Klub, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BREAKFAST KLUB, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>1600 BREAKFAST CLUB, LLC d/b/a The Breakfast Club, and JOHN DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement (15 U.S.C. § 1114)**<br>**(2) Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))**<br>**(3) State Unfair Competition (Cal. Bus. & Prof. Code § 17200 *et seq.*)** |

COMPLAINT

Plaintiff The Breakfast Klub, Inc. ("The Breakfast Klub") brings this Complaint against Defendants 1600 Breakfast Club, LLC d/b/a The Breakfast Club ("TBCLA") and John Does 1-10 and alleges as follows:

## INTRODUCTION

1. The Breakfast Klub has operated a successful, well-known restaurant in Houston, Texas for more than 20 years under THE BREAKFAST KLUB® (plus design) and THE BREAKFAST KLUB HOUSTON® (plus design) marks (collectively, the "BREAKFAST KLUB Marks").

2. The Breakfast Klub restaurant has developed substantial good will and a strong following, making it a dining attraction for both locals and the traveling public visiting from other states.

3. Defendant TBCLA is a self-described "influencer café" and competing breakfast restaurant controlled by famed restauranteur Robert Earl's conglomerate Earl Enterprises Holdings, Inc.

4. In 2021, TBCLA began building out its own intellectual property portfolio in advance of opening the restaurant.

5. TBCLA attempted to register the confusingly similar mark THE BREAKFAST CLUB (plus design) with the U.S. Patent & Trademark Office ("PTO").

6. The PTO rejected TBCLA's registration because of a likelihood of confusion with the BREAKFAST KLUB Marks.

7. TBCLA contacted The Breakfast Klub's owner, Marcus Davis, and asked for consent to use THE BREAKFAST CLUB mark. Mr. Davis refused.

8. Undeterred by the PTO's rejection of TBCLA competing THE BREAKFAST CLUB mark based on a likelihood of confusion and Mr. Davis' refusal to consent to TBCLA's usage, TBCLA knowingly and willfully proceeded to brand and launch its restaurant under THE BREAKFAST CLUB mark.

9. TBCLA's marketing strategy is to generate nationwide media attention

and buzz for its restaurant by marketing and promoting the restaurant as a social media influencer café, situating it at 1600 Vine Street, in the heart of Hollywood and a mere block away from the Hollywood Walk of Fame, inviting and publicizing the patronage of celebrities and tourists.

10. TBCLA's use of THE BREAKFAST CLUB mark creates a very high likelihood of reverse confusion with The Breakfast Klub's BREAKFAST KLUB Marks because even though The Breakfast Klub is the undisputed senior user, consumers are likely to falsely associate its goods and services as originating from or have some association, affiliation, or sponsorship with TBCLA as a result of TBCLA's widespread marketing and nationwide advertising efforts.

11. Further, because both restaurants are located in cities that are travel destinations and among the most populous metropolises in the country, there is also a very high likelihood of forward confusion between TBCLA's THE BREAKFAST CLUB mark and The Breakfast Klub's federally-registered BREAKFAST KLUB Marks.

## PARTIES

12. Plaintiff The Breakfast Klub, Inc. is a corporation organized under the laws of Texas, having its principal place of business at 3711 Travis Street, Houston, Texas 77002.

13. Defendant 1600 Breakfast Club, LLC d/b/a The Breakfast Club is a limited liability company organized under the laws of Florida, having its principal place of business at 1600 Vine Street, Hollywood, California 90028. It is doing business as "The Breakfast Club."

14. The Breakfast Klub's investigation is ongoing and the true names or capacities, whether individual, corporate, or otherwise, of the defendants sued herein under the names "John Does 1-10," inclusive, are unknown and they are therefore sued herein as fictitious parties. The Breakfast Klub will amend this Complaint to show their true names and capacities if and when they are ascertained. The Breakfast

Klub is informed and believes, and on such information and belief alleges, that each of the defendants named as a "John Doe" is responsible in some manner for the unlawful events and occurrences alleged in this Complaint and is liable for the relief sought herein. This includes, but is not limited to, personal liability for all corporate officers, directors, employees, and agents authorizing, directing, and/or participating in the infringement alleged herein.

## JURISDICTION AND VENUE

15. This is an action for trademark infringement arising under 15 U.S.C. § 1114, unfair competition and false designation of origin arising under 15 U.S.C. § 1125(a), and for common law unfair competition under California law.

16. This Court has original subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and this Court has supplemental jurisdiction over the state law claims based on 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over TBCLA because it is engaged in substantial and regular business in the State of California and in the Central District of California, including by operating a restaurant and selling its services at a location in the Central District of California.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because TBCLA resides in this judicial district for venue purposes and a substantial part of the events giving rise to the claims asserted in this Complaint occurred within this judicial district.

## FACTUAL BACKGROUND

### I. The Breakfast Klub's Well Known Marks

19. The Breakfast Klub has operated a well-known breakfast restaurant in Houston's Midtown neighborhood for over 20 years under THE BREAKFAST KLUB® and THE BREAKFAST KLUB HOUSTON® word marks and their associated design marks (collectively, the "BREAKFAST KLUB Marks"):

20. The Breakfast Klub's use of the BREAKFAST KLUB Marks

-4-
COMPLAINT

constitutes use in interstate commerce since at least 2001.

21. The Breakfast Klub also operates a second location in the George Bush Intercontinental Airport, which it opened in 2018.

22. In addition to its restaurant and catering services, The Breakfast Klub also sells goods on its website under the BREAKFAST KLUB Marks, including waffle and pancake mix, coffee, seasoning, fish fry batter, fried chicken coating, coffee mugs, and apparel.

23. The Breakfast Klub applied for a federal registration of THE BREAKFAST KLUB HOUSTON® word mark and associated design mark on August 27, 2003, and the PTO granted that registration on December 19, 2006. It is the owner of U.S. Registration No. 3,185,182 for the following word and design mark:

24. A true and correct copy of the Certificate of Registration for THE BREAKFAST KLUB HOUSTON® mark us attached hereto as Exhibit 1.

25. THE BREAKFAST KLUB HOUSTON® mark is registered in International Class 43 for "Restaurant, bar and catering services.

26. The registration for THE BREAKFAST KLUB HOUSTON® became incontestable by June 2012.

27. The Breakfast Klub applied for a federal registration of THE BREAKFAST KLUB® word and associated design mark on February 19, 2017, and the PTO granted that registration on May 22, 2018. It is the owner of U.S. Registration No. 5,472,759 for the following word and design mark:



28. A true and correct copy of the Certificate of Registration for THE

BREAKFAST KLUB® mark us attached hereto as Exhibit 2.

29. THE BREAKFAST KLUB® mark is registered in International Class 30 for "Pancake mixes; Seasoned coating for meat, fish, poultry; Spices; Waffle mixes; Hotcake mixes; Instant pancake mixes; Seasoning mixes; Spice mixes; all of the foregoing for regular retail sale only and not for foodservice use"; and also in International Class 43 for "Restaurant, bar and catering services.

30. Through the continuous and uninterrupted use of the BREAKFAST KLUB Marks, The Breakfast Klub has developed extensive good will, nationwide notoriety, and customer recognition as a culinary attraction.

31. The Breakfast Klub has been recognized and featured in numerous national and local publications, including Good Morning America, USA Today, Houston Chronicle, Esquire, Forbes, and the Houston Press.

## II. TBCLA Is a Sophisticated and Savvy Infringer

32. Although TBCLA is a relatively new company, it is not new to the concept and value of intellectual property rights.

33. TBCLA is controlled by Earl Enterprise Holdings, Inc. d/b/a Earl Enterprises, which is a sophisticated and self-described "International Leader in Restaurants, Hotels and Entertainment" owned by restauranteur Robert Earl.

34. In addition to TBCLA, Earl Enterprises owns hundreds of restaurants and controls numerous trademarked restaurant chains including Planet Hollywood, Buca di Beppo, Earl of Sandwich, Chicken Guy!, and Café Hollywood.

35. Earl Enterprises employees thousands of people and generates hundreds of millions of dollars in annual sales.

36. The Earl Enterprises conglomerate also controls a prolific intellectual property portfolio, with hundreds of service mark and trademark applications associated with its sprawling business enterprise.

## III. TBCLA Knew About the BREAKFAST KLUB Marks

37. In January 2020, TBCLA applied to the PTO for registration of THE

BREAKFAST CLUB (plus design) mark, which TBCLA described in its application as a mark consisting of "THE BREAKFAST CLUB with the words stacked on top of each other; the 'B' and 'T' in breakfast have notches missing from the letters to signify bite marks; at the top is a reclining, yawning panda bear." Exhibit 3, TBCLA's Trademark Application.

38. The PTO issued a Final Office Action in November 2020 refusing registration of TBCLA's mark "because of a likelihood of confusion with the marks in U.S. Registration Nos. 3185182 (THE BREAKFAST KLUB HOUSTON) and 5472759 (THE BREAKFAST KLUB)." Exhibit 4, Nov. 20, 2020 Final Office Action; *see also* Exhibit 5, Apr. 11, 2020 Non-Final Office Action (reaching the same determination).

39. In other words, the PTO expressly rejected TBCLA's trademark application for THE BREAKFAST CLUB because it created a likelihood of confusion with the BREAKFAST KLUB Marks. Exhibit 5, Nov. 20, 2020 Final Office Action. The PTO reasoned that the marks contain "nearly identical phrases," the addition of a design element "does not obviate the similarity of the mark," and the goods and services are identical or virtually identical. *Id.* (rejecting TBCLA's arguments the marks were diluted by other use).

40. TBCLA eventually abandoned its application to register its mark for THE BREAKFAST CLUB.

41. Interestingly, this was not the first time that the PTO had thwarted attempts by TBCLA's owner, Earl Enterprises, to register the infringing mark for THE BREAKFAST CLUB.

42. In June 2018, another Earl Enterprises company, Planet Hollywood (Region IV), Inc. ("Planet Hollywood"), applied to register THE BREAKFAST CLUB stylized word mark and THE BREAKFAST CLUB (plus design) mark (the latter of which is identical to TBCLA's infringing mark). *See* Exhibit 6, Planet Hollywood Trademark App. Serial No. 88,013,997; Exhibit 7, Planet Hollywood

Trademark App. Serial No. 88,014,088.

43. For the same reasons the PTO would later cite in the April 11, 2020 Non-Final Office Action and the November 20, 2020 Final Office Action, the PTO rejected Earl Enterprises first and second attempts to register the infringing THE BREAKFAST CLUB marks: a likelihood of confusion with the registered BREAKFAST KLUB Marks (in addition to other marks).

44. Planet Hollywood also abandoned these marks following the PTO's refusal.

45. The same attorney that filed Planet Hollywood's applications in 2018 also filed TBCLA's application in 2020.

46. In the 2020 application for TBCLA, the attorney submitted a declaration affirming, under penalty of fine or imprisonment, or both, under 18 U.S.C. § 1001, that "To the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." Exhibit 3, TBCLA's Trademark Application.

47. TBCLA's 2020 trademark application failed to disclose to the PTO that the PTO had rejected an identical application and a substantially similar application six months earlier on the basis of a likelihood of confusion with The Breakfast Klub's federally-registered BREAKFAST KLUB Marks.

**IV.   TBCLA Decided to Willfully and Intentionally Infringe**

48. The Breakfast Klub first learned TBCLA was considering using THE BREAKFAST CLUB mark in 2021 when TBCLA's attorney contacted The Breakfast Klub to ask whether it would consent to TBCLA's use of the mark.

49. The Breakfast Klub refused to grant TBCLA consent to infringe its BREAKFAST KLUB Marks.

50. One would assume that after being rejected three separate times by the PTO based on the basis of a likelihood of confusion and after asking for and being denied consent to use THE BREAKFAST CLUB mark, that the owners of TBCLA would select a different, non-infringing mark. Indeed, The Breakfast Klub made that assumption.

51. TBCLA, however, was undeterred.

52. Even though it had not yet opened its restaurant and could have chosen a new mark, it consciously and willfully decided to move forward with using THE BREAKFAST CLUB mark for its restaurant.

**V.  TBCLA Engages in a Media Blitz**

53. At least by August 2021, TBCLA began operating a breakfast food restaurant at 1600 Vine Street in Hollywood, California under the mark THE BREAKFAST CLUB.

54. By design, TBCLA aspires to obtain nationwide notoriety and acclaim as an influencer café that caters to those wanting to see and be seen, including social media influencers, celebrities, and brands seeking to co-opt the groundswell of publicity and buzz TBCLA is generating for itself.

55. The grand opening of TBCLA on September 21, 2021 is a prime example of this. Through concerted efforts to saturate the media with mention and discussion of TBCLA and its infringing use of THE BREAKFAST CLUB mark, TBCLA ensured that numerous "stars" were in attendance for the opening of what was billed as "Hollywood's newest social club." The "stars" in attendance, clearly designed to attract paparazzi, included Sofia Vergara, Paula Abdul, Mario Lopez and his wife Courtney Laine Mazz, models Jeremy Meeks and Kara Del Toro, A-list celebrity barber Jc tha Barber, and DJ Khaled. The grand opening also featured co-marketing efforts from other brands like BlesswellCo and Von Dutch.

56. On its website (https://www.TheBreakfastClubLA.com/) and social media pages on Facebook (https://www.facebook.com/TheBreakfastClubLA),

Instagram (https://www.instagram.com/TheBreakfastClubLA/), TikTok (https://www.tiktok.com/@TheBreakfastClubLA), and Twitter (https://twitter.com/BreakfastClubLA), TBCLA actively postures itself as "an influencer café where vloggers and social media stars come to socialize." In other words, TBCLA aspires to utilize traditional advertising methods and also harness the power of social media and its biggest stars to access and advertise to a huge audience of potential consumers throughout the United States.

57. For example in the short time that TBCLA's restaurant has been open and operating under the infringing mark THE BREAKFAST CLUB, it has already achieved a high level of social media interactions and engagements:



| facebook | Instagram | TikTok |
|---|---|---|
| • 2,168 check-ins | • 16,700 followers | • 1,718 followers |
| • 592 likes | • 82 posts | • 6,124 likes |
| • 618 followers | | • 40 video posts |
| • 114 posts | | |

58. Aside from its own native content posted to social media, TBCLA has actively promoted the use of hashtags to correlate and transform supposedly unsponsored or unpaid customer promotion on social media into active advertising and marketing material for TBCLA. For example, the TikTok hashtags #TheBreakfastClubLA and #BreakfastClubLA reports more 59,000 views and returns content created both by TBCLA and by "influencers" engaged in co-marketing efforts with TBCLA. The same effect occurs with hashtags on other social media websites: TBCLA is saturating the internet with its infringing use of THE BREAKFAST CLUB mark.

59. TBCLA has also positioned itself at the after-party location for such high profile events as the premier of JoJo Siwa's full length movie "The J Team."

60. TBCLA has also orchestrated numerous media appearances, including features in television interviews and online publications:

   a. *LA Weekly*: The Breakfast Club opens in the Heart of Hollywood and Its Bitchin, available at https://www.laweekly.com/the-breakfast-club-opens-in-the-heart-of-hollywood-and-its-bitchin/;

   b. *Restaurant-Hospitality.com*: Virtual Dining Concepts, Planet Hollywood founder Robert Earl creates new brick-and-mortar restaurant: The Breakfast Club, available at https://www.restaurant-hospitality.com/new-restaurant-concepts/virtual-dining-concepts-planet-hollywood-founder-robert-earl-creates-new;

   c. *NBC Los Angeles*: The Breakfast Club Boasts Breakfast Pizzas, Bagel Towers, available at https://www.nbclosangeles.com/the-scene/the-breakfast-club-boasts-breakfast-pizzas-bagel-towers/2754757/;

   d. *360 Magazine*: Featuring a special holiday drink available at "The Breakfast Club," available at https://www.the360mag.com/holiday-sip-list/;

   e. *KTLA TV*: 'Influencer cafe' opens in Hollywood, led by Planet Hollywood co-founder, available at https://ktla.com/5-live/influencer-cafe-opens-in-hollywood-led-by-planet-hollywood-co-founder/;

   f. *Restaurant-Hospitality.com*: promoting the special "Everything Gimlet" drink available at The Breakfast Club, available at https://www.restaurant-hospitality.com/food-drink/new-menu-lamb-pastrami-and-nagoya-beef-stew/gallery?slide=3.

61. Indeed, in an August 25, 2021 "California Live" feature on NBC the self-proclaimed founder, Robbie Earl, touted TBCLA's lineage by citing his father's founding of Planet Hollywood, that TBCLA is intended to be Generation Z's Planet Hollywood, and that the location of the restaurant at 1600 Vine Street is intended to

harness the power of social media influencers to amplify a brand's presence and awareness in the minds of consumers. *See* https://www.nbcbayarea.com/entertainment/california-live/a-picture-perfect-breakfast-club/2640724/.

62. The relevance of this location—1600 Vine Street—to TBCLA's strategy for nationwide media saturation has been discussed in numerous publications. For example, the New York Times observed that "[t]he building at 1600 Vine functions as dormitory and studio lot for some of the internet's biggest stars." *See* Daisuke Wakabayashi, *Inside the Hollywood Home of Social Media's Stars. (Don't Be Shy.)*, NYTimes.com (last accessed May 11, 2022), *available at* https://www.nytimes.com/2017/12/30/business/hollywood-apartment-social-media.html. In other words, TBCLA selected a location that is a magnet for existing social media influencers, those who hope to become social media influencers, and tourists and locals alike who desire a brush with fame.

63. On review websites Yelp and TripAdvisor, the TBCLA has collectively obtained several hundred customer reviews. Indeed, many of the reviews explicitly acknowledge the impact TBCLA's social-media-influencer marketing strategy has had on the decision to patron the restaurant. Many of the reviews are unfavorable.

64. In addition to its in-person restaurant services, TBCLA also offers for sale on its website promotional apparel (Breakfast Club Von Dutch Trucker Hats) and food delivery services.

## VI. There Is a Very High Likelihood of Confusion

65. As recognized by the PTO in its three rejections, TBCLA's THE BREAKFAST CLUB mark is likely to cause consumer confusion with The Breakfast Klub's BREAKFAST KLUB Marks because, among other things, the marks and the goods and services are virtually identical. Furthermore, both marks are used in online marketing channels. And both TBCLA and The Breakfast Klub offer physical goods for sale nationwide through the internet.

66. The confusion here occurs in two principal forms. TBCLA's use of

THE BREAKFAST CLUB mark is likely to cause reverse confusion because its concerted nationwide media blitz, celebrity and influencer engagement, and social media presence are likely to cause consumers to falsely believe that The Breakfast Klub, which is the senior user of the BREAKFAST KLUB Marks, is associated or affiliated with TBCLA, even though TBCLA is the junior user. In other words, reverse confusion is actionable to "protect the small senior user from losing control over its identity in 'the rising tide of publicity associated with the junior mark.'" *Boldface Licensing+Branding v. By Lee Tillett*, 940 F. Supp. 2d 1178, 1187 (C.D. Cal. 2013).

67. The other form of confusion is forward confusion, meaning that consumers interacting with TBCLA are likely to be confused into believing The Breakfast Klub is the source of origin, a sponsor of, or otherwise approves of TBCLA's goods and services offered under the infringing THE BREAKFAST CLUB mark.

68. The Breakfast Klub demanded that TBCLA cease use of the infringing THE BREAKFAST CLUB mark, but it refused on the theory that because The Breakfast Klub is in Houston and TBCLA is in Hollywood, then TBCLA is free to use THE BREAKFAST CLUB mark knowing it is virtually identical to the BREAKFAST KLUB Marks.

69. TBCLA is legally wrong for several reasons, and morally mistaken in its decision to willfully and intentionally infringe. TBCLA's concept of territoriality as a defense is inapplicable in a reverse confusion case because the trademark harm is in the spread of the junior user's influence in violation of the senior user's nationwide rights. Additionally, both TBCLA and The Breakfast Klub are destination restaurants located in two of the largest cities in the United States, with one of The Breakfast Klub's locations found in an international airport with a current average of at least 35 non-stop daily flights to and from Los Angeles International Airport and more than 16 million total passengers enplaned at the George Bush

Intercontinental Airport in 2021. TBCLA also knew of The Breakfast Klub's BREAKFAST KLUB marks, knew of the likelihood of confusion with those marks, yet willfully, intentionally, and maliciously chose to begin using the infringing THE BREAKFAST CLUB mark.

**FIRST CLAIM FOR RELIEF**
**Federal Trademark Infringement**
**15 U.S.C. § 1114**

70. The Breakfast Klub incorporates by reference as if restated herein the allegations of the preceding paragraphs.

71. The Breakfast Klub is the owner of the federal registrations for THE BREAKFAST KLUB® mark and THE BREAKFAST KLUB HOUSTON® mark, the latter of which is now incontestable.

72. The BREAKFAST KLUB Marks have been in continuous and uninterrupted use in interstate commerce by The Breakfast Klub.

73. TBCLA knowingly used and continues to use in commerce, without The Breakfast Klub's permission or authorization, the BREAKFAST KLUB Marks, and/or confusingly similar marks, in connection with TBCLA's goods and services that it promotes, advertises, offers for sale, and sells in the United States.

74. TBCLA's use of BREAKFAST KLUB Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that The Breakfast Klub's goods and services are produced or distributed by TBCLA, or are associated or connected with TBCLA, or have the sponsorship, endorsement, or approval of TBCLA.

75. Additionally and/or alternatively, TBCLA's use of BREAKFAST KLUB Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that TBCLA's goods and services are produced or distributed by The Breakfast Klub, or are associated or connected with The Breakfast Klub, or have the sponsorship, endorsement, or approval of The

Breakfast Klub.

76. TBCLA's infringing use of THE BREAKFAST CLUB mark is confusingly similar to The Breakfast Klub's federally registered BREAKFAST KLUB Marks in violation of 15 U.S.C. § 1114.

77. TBCLA's activities are causing and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the public, and, additionally, injury to The Breakfast Klub's goodwill and reputation as embodied in The Breakfast Klub's BREAKFAST KLUB Marks, for which The Breakfast Klub has no adequate remedy at law.

78. TBCLA's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Breakfast Klub's BREAKFAST KLUB Marks, resulting in great and irreparable harm.

79. TBCLA has profited and is profiting from such infringement, and The Breakfast Klub has been and is being damaged by such infringement.

80. TBCLA caused and is likely to continue causing substantial injury to the public and to The Breakfast Klub, and The Breakfast Klub is entitled to injunctive relief and to recover TBCLA's profits, actual damages, enhanced profits and damages, any other compensable damages (including but not limited to damages for corrective advertising), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**SECOND CLAIM FOR RELIEF**
**Unfair Competition and False Designation of Origin**
**15 U.S.C. § 1125(a)**

81. The Breakfast Klub incorporates by reference as if restated herein the allegations of the preceding paragraphs.

82. The Breakfast Klub's BREAKFAST KLUB Marks have acquired distinctiveness and enjoy secondary meaning among consumers and identify The Breakfast Klub as the source of the goods and services with which they are used.

83. TBCLA has knowingly used and continue to use in interstate commerce, without The Breakfast Klub's permission or authorization, The Breakfast Klub's BREAKFAST KLUB Marks, and/or confusingly similar marks, in connection with TBCLA's goods and services that it promotes, advertises, offers for sale, and sells in the United States.

84. TBCLA's use of BREAKFAST KLUB Marks, and/or confusing similar marks, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that The Breakfast Klub's goods and services are produced or distributed by TBCLA, or are associated or connected with TBCLA, or have the sponsorship, endorsement, or approval of TBCLA.

85. Additionally and/or alternatively, TBCLA's use of BREAKFAST KLUB Marks, and/or confusingly similar marks, has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that TBCLA's goods and services are produced or distributed by The Breakfast Klub, or are associated or connected with The Breakfast Klub, or have the sponsorship, endorsement, or approval of The Breakfast Klub.

86. TBCLA has made false representations, false descriptions, and false designations of, on, or in connection with its goods and services in violation of 15 U.S.C. § 1125(a). TBCLA's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of public, and, additionally, injury to The Breakfast Klub's goodwill and reputation as embodied in the BREAKFAST KLUB Marks, for which The Breakfast Klub has no adequate remedy at law.

87. TBCLA's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Breakfast Klub's BREAKFAST KLUB Marks, resulting in great and irreparable harm.

88. TBCLA has profited and is profiting from such infringement, and The Breakfast Klub has been and is being damaged by such infringement.

89. TBCLA's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with The Breakfast Klub's BREAKFAST KLUB Marks to the great and irreparable injury of The Breakfast Klub. TBCLA's conduct has caused, and is likely to continue causing, substantial injury to the public and to The Breakfast Klub. The Breakfast Klub is entitled to injunctive relief and to recover TBCLA's profits, actual damages, enhanced profits and damages, any other compensable damages (including but not limited to damages for corrective advertising), costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

**THIRD CLAIM FOR RELIEF**
**State Law Unfair Competition under**
**Cal. Bus. & Prof. Code § 17200 *et seq.***

90. The Breakfast Klub incorporates by reference as if restated herein the allegations of the preceding paragraphs.

91. TBCLA has been and is engaged in unlawful, unfair and/or fraudulent business practices in violation of California Business & Professions Code § 17200, *et seq*.

92. TBCLA has intentionally traded upon and unfairly benefited from The Breakfast Klub's valuable goodwill, reputation, and substantial marketing and promotion, and have been unjustly enriched thereby.

93. TBCLA has misappropriated for itself the commercial value of The Breakfast Klub's BREAKFAST KLUB Marks and have harmed the value of The Breakfast Klub's goodwill in the BREAKFAST KLUB Marks.

94. TBCLA's acts greatly and irreparably damage The Breakfast Klub and will continue to so damage The Breakfast Klub unless restrained by this Court. As a result, The Breakfast Klub is without an adequate remedy at law. Accordingly, The Breakfast Klub is entitled to, among other things, restitution in an amount to be determined at trial, any other compensable damages (including but not limited to

damages for corrective advertising), punitive damages, and an order enjoining and restraining TBCLA from advertising and selling infringing goods and services.

**PRAYER FOR RELIEF**

The Breakfast Klub respectfully requests that the Court enter judgment in its favor and against TBCLA as follows:

A. Preliminary and/or permanent injunctive relief prohibiting further infringement of the BREAKFAST KLUB Marks, including (i) a prohibition on any further marketing, distribution, or use of any materials or media containing "Breakfast Club" or any other infringing use of the BREAKFAST KLUB Marks, and (ii) an order directing TBCLA to destroy all materials or media in the possession, custody, or control of TBCLA that violate The Breakfast Klub's rights.

B. An award to compensate The Breakfast Klub for the harm suffered as a result of TBCLA's infringement, including but not limited to an award of money damages for prospective corrective advertising of a duration and scope sufficient to remedy, to the extent possible, the harm caused by TBCLA's infringement.

C. An award of all profits received by TBCLA in connection with its infringement of the BREAKFAST KLUB Marks.

D. An award of trebled and enhanced damages as provided for under 15 U.S.C. § 1117 based on TBCLA's knowing and intentional use of a mark that is confusingly similar to The Breakfast Klub's BREAKFAST KLUB Marks.

E. An award of Plaintiff's attorneys' fees in accordance with 15 U.S.C. § 1117.

F. An award of punitive damages.

G. An award of all costs of this civil action.

H. An award of prejudgment and post-judgment interest on all monetary

awards.

I. All other relief, in The Breakfast Klub's favor, that the Court deems just and proper.

**JURY DEMAND**

The Breakfast Klub hereby demands a trial by jury on all claims and issues so triable.

DATED: May 31, 2022  JONES WALKER LLP

By: */s/ John W. Mills*
John W. Mills
Attorneys for Plaintiff
The Breakfast Klub, Inc.